IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 1:11-CR-42-TCB-LTW |
| v. | |
| ERIC W. JONES, | |
| Defendant. | |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

Pending before this Court is Defendant Eric Jones' Motion to Suppress Statements. Docket Entry [8]. This Court convened a suppression hearing on April 21, 2011. Docket Entry [16]. On August 5, 2011, the Government filed a response in opposition to Defendant's motion. Docket Entry [25]. Having considered the Defendant's motion and the parties' briefs, for the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress Statements be **DENIED**. Docket Entry [8].

## DEFENDANT'S MOTION TO SUPPRESS

### I.   FACTUAL BACKGROUND

On August 4, 2010, Special Agent James P. Hosty of the Federal Bureau of Investigation's Law Enforcement Corruption Squad and Special Agent Todd A. Goodson were investigating Defendant Eric Jones ("Defendant"), an officer with the Atlanta Police Department since approximately 1992, concerning his involvement with an illegal nightclub. (Transcript of April 22, 2011 Evidentiary Hearing, Docket Entry

[16], hereinafter "Tr.," 4-5, 8, 32, 35). The Special Agents arrived at Defendant's home in the afternoon, between 2:00 and 4:00 p.m., without previously having contacted Defendant to let him know they were coming. (Tr. 4-5, 31). The Special Agents, clad in a suits and ties and carrying concealed firearms, knocked on Defendant's front door, identified themselves as Federal Bureau of Investigation agents, showed Defendant their badges, and asked if they could come inside and speak with him. (Tr. 9-11, 27-28, 39). Defendant stepped out on the front porch, shut the door behind him, and replied, "No, I'm coming out on the front porch." (Tr. 28). While on the front porch, Special Agents Hosty and Goodson stood on one side of the porch facing Defendant with their backs against a brick wall and Defendant stood on the other side of the porch which opened to a field. (Tr. 28-29).

The Special Agents asked Defendant whether he was familiar with a nightclub at Lincoln and Pryor Streets, and he answered that he was. (Tr. 30). The Special Agents also questioned Defendant about his involvement with the club and whether he ever worked for the club, and he responded that he had not. (Tr. 30). Defendant appeared confrontational and agitated during the questioning, but the Special Agents continued to ask him questions. (Tr. 31). After Defendant said that he did not work at the club or receive money from the owners of the club, the Special Agents advised him that making a false statement to an agent with the Federal Bureau of Investigation was a violation of federal law and that he could be indicted for making false statements. (Tr. 32). Shortly thereafter, Defendant requested to speak to an attorney before answering any

other questions. (Tr. 11, 32, 41). At that time, the Special Agents ended the interview, provided Defendant with a business card, and told Defendant to have his attorney contact them if he wished to make any further statements. (Tr. 11, 32, 41).

Although Defendant allegedly displayed a cocky or confrontational attitude towards the Special Agents, they did not display their firearms, threaten Defendant, physically restrain him, touch him, restrict his movement in any way, handcuff him, or make any promises to him in order to induce him to speak with them during the interview. (Tr. 9-11). The Agents did not prevent Defendant from going back into his home or leaving his home and did not arrest him. (Tr. 11, 35). Defendant never asked the Special Agents to leave. (Tr. 11). The interview lasted no more than five minutes. (Tr. 32).

On February 8, 2011, the Grand Jury entered a single count indictment against Defendant, alleging that he knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation to Special Agents of the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001. Docket Entry [1]. Defendant now seeks to suppress statements he made to the Special Agents.

## II. LEGAL ANALYSIS

Defendant argues that his statements to the Special Agents should be suppressed because they illegally seized him without probable cause and because they placed him in custody and interrogated him without reading him <u>Miranda</u> warnings. Defendant contends that he was in the Special Agents' custody or seized because under the

3

circumstances a reasonable person standing in his shoes would not feel free to leave. In support, Defendant notes that the Special Agents "flanked him with the interview stance" and aggressively questioned him, even though he displayed his irritation indicating that he did not want the Special Agents to be there. The Government argues in response that Defendant was not in custody because the interview occurred after he voluntarily stepped out of his home to speak with them, Defendant was not physically restrained or told he was under arrest, and the Special Agents stopped questioning him after he stated that he wanted to speak with an attorney.

This Court finds no violation of Defendant's rights. The Special Agents were not required to give Defendant Miranda warnings or required to have probable cause prior to speaking with him because he was not detained or in custody. The Fifth Amendment of the United States Constitution prohibits the use of an involuntary confession against a defendant in a federal criminal trial. U.S. Const. amend. V; Dickerson v. United States, 530 U.S. 428, 433 (2000); Bram v. United States, 168 U.S. 532, 542 (1897). "To determine whether a confession is voluntary, the court must assess 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" Waldrop v. Jones, 77 F.3d 1308, 1316 (11th Cir. 1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). The totality of the circumstances test to determine voluntariness of a confession turns primarily on the presence of "police overreaching," and relevant factors include the "accused's lack of education, or his low intelligence, the lack of any advice to the accused of his

4

constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." Id. (internal citations omitted). In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized the need to further safeguard the privilege against self-incrimination by requiring that Miranda warnings, or other fully effective means, be given to subjects of custodial interrogations. Miranda, 384 U.S. at 478-79; see also Dickerson, 530 U.S. at 442-43 (rejecting Congress's attempt through 18 U.S.C. § 3501 to reinstate the totality test as sufficient). The right to Miranda warnings, however, does not attach until the initiation of a custodial interrogation. United States v. Acosta, 363 F.3d 1141, 1148 (11th Cir. 2004); see also United States v. Grimes, 142 F.3d 1342, 1348-49 (11th Cir. 1998) (applying Miranda only if defendant was both (a) in custody and (b) being interrogated at the time the statements were made).

A defendant is in custody or seized when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (internal quotation marks omitted)). Using an objective test, a court will find a defendant in custody if "under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave." United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001); see also United States v. Dunn, 345 F.3d 1285, 1288 (11th Cir. 2003) (noting that a seizure takes place when, taking into account the

circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business). The actual, subjective beliefs of the defendant and interviewing officer are irrelevant to this inquiry, id., and the objective test presupposes a reasonable innocent person. United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996). Factors to be considered include the location of the interview and whether "the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006); Brown, 447 F.3d at 1348.

Brief investigatory detentions must be justified by reasonable suspicion and lengthier detentions must be supported by probable cause. Dunn, 345 F.3d at 1288-89. Under certain circumstances, statements made after an illegal detention or arrest may be suppressed as fruit of the poisonous tree. United States v. Chanthasouxat, 342 F.3d 1271, 1281 (11th Cir. 2003).

In this case, Defendant was not seized or in the Special Agents' custody. Although Defendant characterizes the Special Agents' questioning as aggressive, the facts of this case do not support his characterization. The Special Agents did not formally place Defendant under arrest, touch him, physically restrain him, or otherwise compel him to make a statement. (Tr. 9-11). The interview was less than five minutes long, and the Special Agents never prevented Defendant from leaving or returning indoors. (Tr. 11, 32, 35). Additionally, the stance of the Special Agents and Defendant

on the front porch did not restrict Defendant's freedom because it is undisputed that the Special Agents backs were against the porch wall and Defendant's back was facing an open field; thus, the Special Agents did not obstruct his egress. (Tr. 28-29). Moreover, the fact that the interview occurred at Defendant's home militates against a finding that he was in custody because his home is a familiar, neutral surrounding for him. Brown, 441 F.3d at 1348 (finding that the fact that interrogation occurred at the defendant's girlfriend's home weighed in favor of a finding that the defendant was not in custody). Accordingly, this Court concludes that Defendant was not in custody or seized when he made statements to the Special Agents. See, e.g., United States v. Gomes, 279 F. App'x 861, 869 (11th Cir. 2008) (holding that defendant who was interviewed outside of a locked fence, was not physically restrained in any way, and was not told that he was under arrest, was not in custody even though officer told him that he would contact a probation officer who defendant feared would have him arrested); United States v. Opoku, 210 F. App'x 848, 851-52 (11th Cir. 2006) (holding that defendant who freely moved about his house albeit under supervision of agents, was not in custody of agents who did not handcuff him, brandish weapons, or make promises or threats); United States v. Saric, No. 8:06-cr-488-T-23MSS, 2007 WL 2264626, at *2-3 (M.D. Fla. Aug. 6, 2007) (finding that defendant who was not physically restrained, or forced to permit agents to enter his home was not in custody despite his argument that an agent raised his voice twice and brandished his weapon during the interview). Because Defendant was not seized or in custody, the Special Agents were not required to have probable cause

or reasonable suspicion and were not required to give him Miranda warnings prior to questioning him. Accordingly, Defendant's Motion to Suppress Statements should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Statements be **DENIED**. Docket Entry [8]. There are no further motions or problems pending before the undersigned to prevent the scheduling of this case for trial. Therefore, this action is **CERTIFIED READY FOR TRIAL**.

**SO ORDERED, REPORTED AND RECOMMENDED** this 23 day of August, 2011.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL CASE NO. 1:11-CR-42-TCB-LTW |
| ERIC W. JONES, | |
| Defendant. | |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

Attached is the report and recommendation of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636 and this Court's Local Rule 72.1C. Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after service of this order, each party may file written objections, if any, to the Report and Recommendation. Pursuant to Title 18, United States Code, Section 3161(h)(1)(F), **the above-referenced fourteen (14) days allowed for objections is EXCLUDED from the computation of time under the Speedy Trial Act.**

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the district court. If no objections are filed, the report and recommendation may be adopted

as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

The Clerk is directed to submit the report and recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 23 day of August, 2011.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE