IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

ERIC W. JONES and ELTON
AUGUSTIN,

　　　　Defendants.

CRIMINAL CASE NO.
1:11-CR-42-TCB-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER CERTIFYING DEFENDANT AUGUSTIN READY FOR TRIAL[1]

Pending before this Court are various motions brought by Defendants Eric W. Jones and Elton Augustin. Docket Entries [61-64, 66, 86, 87, 90, 92, 93]. For the reasons outlined below, this Court concludes as follows:

(1)　　Defendant Augustin's Motion to Dismiss Counts I, II and IV of the First Superceding Indictment should be **DEEMED MOOT**. Docket Entry [61].

(2)　　Defendant Augustin's Motion for Severance Pursuant to Rule 8(b) should be **DEEMED MOOT**. Docket Entry [62].

(3)　　Defendant Jones's Motion for Bill of Particulars is **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [63].

---

[1]This Court observes that Defendant Augustin has been indicted with an additional Defendant and that matters pertaining to such Co-Defendant are still pending. Pursuant to 18 U.S.C. §3161(h)(7) (the Speedy Trial Act), the time for commencing Defendant Augustin's trial may be stayed until such time as the other Defendant has been certified ready for trial. Hence, it is not necessary to place Defendant Augustin's case on the calendar for trial at this time.

(4)    Defendant Jones's Motion to Dismiss or for the Election of Count on Grounds of Multiplicity should be **DENIED**.  Docket Entry [64].

(5)    Defendant Jones's Motion to Dismiss the Indictment should be **DENIED**.  Docket Entry [66].

(6)    Defendant Augustin's Motion to Dismiss Counts I and IV of the Second Superceding Indictment should be **DENIED**.  Docket Entry [86].  Defendant Augustin's Alternative Motion for a Bill of Particulars should be **GRANTED IN PART AND DENIED IN PART.**  Docket Entry [86].

(7)    Defendant Augustin's Motion to Sever Defendant is **DENIED**.  Docket Entry [87].

(8)    Defendant Augustin's Motion to Dismiss Counts I and II of the Second Superceding Indictment should be **DENIED**.  Docket Entry [90].

(9)    Defendant Jones's Amended Motion to Dismiss the Indictment should be **DENIED**.  Docket Entry [92].

(10)   Defendant Jones's Motion for Adoption of Prior Motions is **GRANTED IN PART AND DENIED IN PART**.  Docket Entry [92].

(11)   Defendant Jones's Motion for Production of Grand Jury Transcripts is **GRANTED**.  Docket Entry [93].

## DEFENDANT AUGUSTIN'S MOTION TO DISMISS COUNTS I, II, AND IV OF THE FIRST SUPERCEDING INDICTMENT AND MOTION FOR SEVERANCE PURSUANT TO RULE 8(B)

On December 27, 2011, Defendant Augustin filed a Motion to Dismiss Counts

2

I, II and IV of the First Superseding Indictment and a Motion for Severance Pursuant to Rule 8(b). Docket Entries [61, 62]. On March 13, 2012, the Government filed a Second Superceding Indictment and Augustin again moved to dismiss counts I and IV of the Second Superseding Indictment and to sever defendants. Docket Entries [86, 87]. Accordingly, Defendant Augustin's Motion to Dismiss Counts I, II, and IV of the First Superceding Indictment or in the Alternative for a Bill of Particulars and Defendant's Motion for Severance Pursuant to Rule 8(b) should be **DEEMED MOOT**. Docket Entries [61, 62].

## DEFENDANT AUGUSTIN'S MOTION TO DISMISS COUNTS I AND IV OF THE SECOND SUPERCEDING INDICTMENT OR IN THE ALTERNATIVE FOR A BILL OF PARTICULARS

On March 13, 2012, Defendants Eric W. Jones and Elton Augustin ("Defendants") were charged by the Grand Jury with conspiracy to commit extortion under color of official right in violation of 18 U.S.C. § 1951(a). Docket Entry [76]. Additionally, both Defendants were charged with making false statements in violation of 18 U.S.C. § 1001(a)(2). Docket Entry [76]. Specifically, Defendant Augustin ("Augustin") was charged with four counts (Counts Three through Six) of making false statements and Defendant Jones ("Jones') was charged with two counts (Counts Seven and Eight) of making false statements. Docket Entry [76].

In Defendant Augustin's Motion to Dismiss Counts I and IV of the Second Superceding Indictment, Augustin argues that Count I (Conspiracy to Commit Extortion Under Color of Official Right) should be dismissed because it fails to allege a prior

AO 72A
(Rev.8/82)

agreement between Jones and Augustin to achieve an unlawful motive. Augustin contends, in the alternative, that the Court should grant a bill of particulars outlining the terms of the agreement, Augustin's acts showing his participation in the agreement, and the unlawful goals of the agreement. Augustin further argues that Count IV (False Statement) should be dismissed because it is multiplicitous. Docket Entry [86].

## I.    Count One

Defendant Augustin contends that Count One of the Second Superceding Indictment should be dismissed because it does not allege that Augustin knowingly participated in a prior agreement with Jones to achieve an unlawful objective. In support, Augustin argues that the Government's evidence suggests that Defendants Augustin and Jones each worked at the club separately but did not work together as part of an overall agreement or master plan to achieve an illegal goal. In response, the Government contends that Count I is sufficient because it tracks the elements of the crime charged. The Government further contends that the indictment satisfactorily alleges an agreement because it alleges that Defendants "did knowingly conspire."

Federal Rule of Criminal Procedure 12(b)(3)(B) allows a defendant to file a motion, alleging a defect in the indictment or information. Fed. R. Crim. P. 12(b)(3)(B). "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United

AO 72A
(Rev.8/82)

States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011). The sufficiency of a criminal indictment is determined from its face. United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) (quoting United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992)). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." United States v. Garrett, 467 F. App'x 864, 867 (11th Cir. 2012), citing Hamling v. United States, 418 U.S. 87, 117 (1974); see also Critzer, 951 F.2d at 307-08; United States v. Malone, No. 804CR348T24TGW, 2005 WL 1243762, at *3 (M.D. Fla. May 25, 2005) (finding that indictment for extortion conspiracy sufficient to withstand a motion to dismiss because it tracked the language of the extortion conspiracy statute which set forth the essential elements of the crime).

In this case, the Indictment includes the essential elements of a Hobbs Act conspiracy under 18 U.S.C. § 1951. The Indictment not only references the statute, but it also tracks the language of the statute in that it provides Jones and Augustin conspired to obstruct, delay, or affect commerce by means of extortion. Compare Count One, Docket Entry [76] with 18 U.S.C. § 1951(a). Furthermore, while this Court agrees with Defendants that the existence of an agreement between the conspirators is an essential element of a conspiracy claim, the words of the indictment convey the existence of an agreement between Jones and Augustin. United States v. Davis, 679 F.2d 845, 851-52 (11th Cir. 1982); see also United States v. Chandler, 388 F.3d 796, 805-06 (11th Cir.

5

2004) ("The essence of the conspiracy is this agreement to commit an unlawful act."); United States v. Willis, 232 F. App'x 527, 536 (6th Cir. 2007) (noting that the elements of a conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951, includes (1) an agreement between two or more individuals, (2) affecting interstate commerce, (3) to obtain property from another, (4) with consent, (5) induced under color of official right). The Indictment states that Defendants Jones recruited Defendant Augustin and that Jones and Augustin "did *knowingly conspire*" to extort money from the proprietors of a nightclub. The word conspire is commonly understood to mean "to *agree* together, especially secretly, to do something wrong, evil, or illegal" or "to *join in a secret agreement* to do an unlawful or wrongful act or an act which becomes unlawful as a result of the secret agreement." See Merriam-Webster's Collegiate Dictionary (11th ed. 2012), http://www.merriam-webster.com/dictionary/conspire; Collins English Dictionary (10th ed. 2009), http://dictionary.reference.com/browse/conspire?s=t. Thus, while the Indictment does not specifically utilize the word "agreement," other words within the Indictment convey the same meaning. The indictment further alleges the unlawful object of Augustin and Jones's alleged agreement–to extort money from the proprietor of the nightclub. Thus, the Indictment sufficiently alleges an agreement for the purpose of a common unlawful goal (extortion). See, e.g., United States v. Bascaro, 742 F.2d 1335, 1348 (11th Cir. 1984) (finding that the indictment adequately charged conspiracy when it provided the locale and dates of the conspiracy, names of co-conspirators, and alleged that conspirators "unlawfully, willfully and knowingly

6

conspire[d], combine[d], confederate[d], and agree[d] together, which each other and with diverse other persons known and unknown to the Grand Jury to distribute and to possess with intent to distribute, marijuana.") (abrogated on other grounds by United States v. Lewis, 492 F.3d 1219 (11th Cir. 2007)); United States v. Mavroules, 819 F. Supp. 1109, 1111 (D. Mass. 1993) (concluding that conspiracy was adequately pled where the indictment alleged that the Defendant *conspired* with others for unlawful purposes-to extort money for himself and employment for his brother).

Augustin argues on reply that the use of the general term "conspired" is not sufficient. In support, Augustin contends that when an indictment includes a "general description of an offense," it must be accompanied with a statement of the facts and circumstances to inform him of the specific offense with which he is charged. Augustin further contends that Count I is insufficient because he has not been provided with information about the illicit agreement he is alleged to have entered into, other than recitation of statutory language. "For an indictment to be valid, it must . . . sufficiently apprise the defendant of what he must be prepared to meet." United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003) (internal quotation marks omitted). An indictment is defective if it is not framed to apprise the defendant with reasonable certainty of the nature of the accusation against him, even though it may follow the language of the statute. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). Thus, if the indictment tracks the language of the statute, it must be accompanied with a statement of facts and circumstances that will inform the accused of the specific offense, coming

7

under the general description, with which he is charged. Id. That being said, "[i]t is not necessary for an indictment . . . to allege in detail the factual proof that will be relied upon to support the charges. That information, if essential to the defense, can be obtained by a motion of a bill of particulars." Sharpe, 438 F.3d at 1263 n.3.

This Court finds that Count I adequately informs Defendants of the nature of the charges against them and passes constitutional muster because it refers to the statute violated, references the essential elements of the offense, provides the identities of co-conspirators, provides the time span of the conspiracy, and describes the location of the conspiracy, and the object of the conspiracy. United States v. Wayerski, 624 F.3d 1342, 1350 (11th Cir. 2010) (explaining that defendant was adequately informed of child exploitation enterprise charge against him where the indictment specifically referred to the statute upon which the charge was based, tracked the wording of the statute, named the co-conspirators, and alleged time and place of predicate violations); Bascaro, 742 F.2d at 1348-49 (holding that indictment sufficiently stated conspiracy to import a controlled substance charge where it identified co-conspirators, the controlled substance, as well as the time-span and locale of the conspiracy); United States v. Durrett, No. 1:10–CR–134–WSD, 2012 WL 243761, at *4 (N.D. Ga. Jan. 25, 2012). Here, the Indictment identifies the statute upon which the conspiracy charge was based, named co-conspirators, alleged the time frame of the alleged extortion, identified the illegal nightclub where Defendants allegedly performed "protection services," and described the nature of the "protection services."

AO 72A
(Rev.8/82)

Augustin further argues that it is not sufficient for the indictment to simply say that Defendants each shared a common goal, e.g., profit from the sale of cocaine. Augustin maintains that the Indictment is insufficient because it must allege a single enterprise setting up a common goal connecting each Defendant. In support, Augustin relies upon United States v. Glinton, 154 F.3d 1245 (11th Cir. 1998). This Court notes, however, that the decision in Glinton is distinguishable. In Glinton, the Eleventh Circuit considered whether evidence presented at a lengthy trial was enough to establish separate conspiracies. The two conspiracies consisted of conspiracy to manufacture and possess with intent to distribute crack cocaine and an additional conspiracy to possess with intent to deliver cocaine and cocaine hydrochloride. Id. at 1250. In determining that there was insufficient evidence of a conspiracy, the Court observed that there was no evidence of any interconnection or cooperative activity between the defendants and that each defendant separately bought cocaine from a single supplier and sold crack through his or her own distribution chain. Id. Additionally, the Court observed that the evidence showed that each defendant functioned by themselves, separate and distinct from one another, without any overlapping connection between them. Id. at 1252. As a result, the Court concluded that the government had not proven a single conspiracy, but rather several clusters of conspiracies. Id. at 1252.

In contrast, the Indictment at issue in this case sufficiently alleges a single conspiracy connecting Jones and Augustin. The Indictment charges that Jones recruited Augustin for "protection services" and that the two, both police officers with the City

9

of Atlanta Police Department, conspired together to extort money from the proprietor of the nightclub. As part of the conspiracy to extort the nightclub proprietor, both Jones and Augustin received money for acting within their official capacity as law enforcement officers to discourage on-duty Atlanta police officers from investigating activity at the club and not reporting illegal activity at the club. Thus, the Indictment here alleges connective behavior by the Defendants and not, as in Glinton, separate behavior by alleged co-conspirators, who in some cases, did not know each other. See United States v. McNair, 605 F.3d 1152, 1202-03 (11th Cir. 2010) (similarly distinguishing Glinton because Glinton involved a "hub and spoke conspiracy" and the hub of the conspiracy ensured that there was no connection whatsoever between the various spokes, who knew nothing about each other). Because the Indictment adequately apprises Defendants of the nature of the charges against them, Augustin's Motion to Dismiss Count I should be **DENIED**. Docket Entry [86].

Augustin contends, in the alternative, that the Government should be directed to file a bill of particulars which identifies (1) the terms of the alleged agreement; (2) Augustin's acts and participation in such agreement; and (3) the unlawful goals of the agreement. While this Court is not entirely persuaded that Augustin is entitled to further information regarding the specific terms of the alleged agreement or the goals of the agreement, Augustin is entitled to know in general what unlawful acts he did in furtherance of the illegal purpose of the agreement in order to allow him to prepare his defense and avoid surprise at trial.

10

Pursuant to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)). A bill of particulars supplements an indictment by providing information *necessary* for a defendant to prepare for trial, and it is not meant to function as a discovery device. Anderson, 799 F.2d at 1441-42 (emphasis in original); see also United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (stating that a bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial") (citing United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978)); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting Hemphill v. United States, 392 F.2d 45, 49 (8th Cir. 1968), implied overruling on other grounds recognized, United States v. Lattimore, 946 F. Supp. 245, 246 (W.D.N.Y. 1996). The Court is vested with broad discretion in deciding whether to grant a motion for bill of particulars. Cole, 755 F.2d at 760; United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). However, "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error." Cole, 755 F.2d at 760; see also

United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (noting that an indictment need not allege in detail the factual proof that will be relied upon to support a charge but that failing to grant a motion for a bill of particulars to obtain information essential to the defense may be reversible error); United States v. Rosenthal, 793 F.2d 1214,1226-27 (11th Cir. 1986) (holding that the government was not required to provide the defendant with the essential facts regarding the formation of a conspiracy or every overt act that might be proven at trial) (modified on other grounds, United States v. Rosenthal, 801 F.2d 378 (11th Cir. 1986)).

In this case, some additional factual detail is necessary so that Augustin can prepare his defense and minimize surprise at trial. The Second Superceding Indictment, while legally sufficient, fails to provide Augustin with sufficient factual information to prepare his defense as to the illegal activity Augustin agreed not to report and what investigations by other Atlanta Police officers Augustin agreed to discourage. Accordingly, the Government is **ORDERED** to provide, within fourteen days of the date of this Order and Report and Recommendation, a Bill of Particulars in which the Government shall generally describe the illegal activity Augustin agreed not to report/refrained from reporting and what investigations by other Atlanta Police officers Augustin discouraged or agreed to discourage.

The remainder of the information sought by Augustin is not necessary to avoid surprise or prepare his defense. The Indictment adequately informs Defendants of the purpose of the agreement, participants in the agreement, the time period of the

conspiracy, and the general nature of the protective services that Augustin did in furtherance of the conspiracy. Further detail is not necessary to allow Defendant to prepare his defense. United States v. Gomez, No. 10–10023–JTM, 2011 WL 5828016, at *2 (D. Kan. Nov. 18, 2011) (concluding that defendant was not entitled to bill of particulars including specific terms of agreement and other information); United States v. Molina, No. 09–40041–01–10–RDR, 2010 WL 2346393, at *5 (D. Kan. June 9, 2010) (neither the indictment nor a bill of particulars need identify the specific terms of the conspiratorial agreement); United States v. Welch, No. 09–40029–09, 2010 WL 358075, *1 (D.S.D. Jan. 29, 2010) (declining to compel bill of particulars as to details about the substance of any agreements and information about instances in which the agreements were carried out because indictment sufficiently alleged the essence of the charges); United States v. Miller, 250 F.R.D. 588, 600 (D. Kan. 2008) (refusing to compel bill of particulars because neither the indictment nor the bill of particulars need identify the specific terms of the conspiratorial agreement). Accordingly, Augustin's alternative motion for a bill of particulars is **GRANTED IN PART AND DENIED IN PART**. Augustin's motion is **GRANTED** with regard to the illegal activity Augustin allegedly agreed not to report/refrained from reporting, and as to what investigations by other Atlanta Police officers Augustin discouraged or agreed to discourage. Augustin's request for additional information in a bill of particulars is **DENIED**.

## II.   Count Four

Defendant Augustin argues that Count Four of the Second Superceding

13

Indictment should be dismissed because it is multiplicitous with Count Three. In Counts Three and Four of the Superceding Indictment the Government alleged the following against Augustin in part:

### Count Three

On or about August 3, 2010, in the Northern District of Georgia, the defendant, ELTON AUGUSTIN, then a police officer with the Atlanta Police Department, did knowingly and willfully make a materially false statement in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the Government of the United States, when ELTON AUGUSTIN, interviewed by agents of the Federal Bureau of Investigation stated:

"No," *in response to the question, "Did you work at the club?"* (referring to a nightclub that was located near Lincoln and Pryor Streets in Atlanta, Georgia);

Whereas, in truth and in fact, as ELTON AUGUSTIN then well knew, this statement was false;

In violation of Title 18, United States Code, Section 1001(a)(2).

### Count Four

On or about August 3, 2010, in the Northern District of Georgia, the defendant, ELTON AUGUSTIN, then a police officer with the Atlanta Police Department, did knowingly and willfully make a materially false statement in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the Government of the United States, when Elton AUGUSTIN, interviewed by agents of the Federal Bureau of Investigation, stated:

"No," *in response to the question, "Did you receive money from the club?"* (referring to a nightclub that was located near Lincoln and Pryor Streets in Atlanta, Georgia);

Whereas, in truth and in fact, as ELTON AUGUSTIN then well knew this statement was false;

In violation of Title 18, United States Code, Section 1001(a)(2).

Augustin argues that the two counts are multiplicitous because the two counts separately charge Augustin for substantially the same false statement regarding not

14

working for the night club. In response, the Government argues that Augustin's statements constituted separate offenses because they conveyed different information.

An indictment is multiplicitous if it charges a single offense in more than one count. <u>United States v. Jones</u>, 601 F.3d 1247, 1258 (11th Cir. 2010); <u>United States v. De La Mata</u>, 266 F.3d 1275, 1288 n.12 (11th Cir. 2001) (citing <u>United States v. Sirang</u>, 70 F.3d 588, 595 (11th Cir. 1995), <u>cert. denied</u>, 535 U.S. 989 (2002); <u>United States v. Howard</u>, 918 F.2d 1529, 1533 (11th Cir. 1991). "When the Government charges a defendant in multiplicitous counts, two vices may arise. First, the defendant may receive multiple sentences for the same offense. Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes--not one." <u>United States v. Smith</u>, 231 F.3d 800, 815 (11th Cir. 2000) (quoting <u>United States v. Langford</u>, 946 F.2d 798, 802 (11th Cir. 1991), <u>cert. denied</u>, 503 U.S. 960 (1991)). A multiplicitous indictment also violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense. <u>Jones</u>, 601 F.3d at 1258; <u>United States v. Williams</u>, 527 F.3d 1235, 1241 (11th Cir. 2008). The test for multiplicity is whether each count requires proof of a fact which the other does not. <u>Howard</u>, 918 F.2d at 1533.

To determine whether an indictment is multiplicitous, the court must first determine the allowable unit of prosecution. <u>Langford</u>, 946 F.2d at 802. Pursuant to 18 U.S.C. § 1001, it is a crime to knowingly and willfully (1) falsify, conceal, or cover up a material fact by any trick, scheme, or device; (2) make a materially false, fictitious,

or fraudulent statement or representation; or (3) make or use any false writing or document knowing the same to contain materially false, fictitious, or fraudulent statements or entries. 18 U.S.C. § 1001. Section 1001 thus makes it an offense to knowingly and willfully make a single false representation of material fact to a United States Agency. United States v. Guzman, 781 F.2d 428, 432 (5th Cir. 1986). However, where identical false statements are made in response to identical questions, the declarant may only be convicted once for a violation of 18 U.S.C. § 1001. United States v. Stewart, 420 F.3d 1007, 1013 (9th Cir. 2005); United States v. Jameson, 972 F.2d 343, at *9 (4th Cir. 1992); United States v. Segall, 833 F.2d 144, 146 (9th Cir. 1987). "This is so because the repetition of a false statement by a declarant does not further impair the operations of the government beyond the initial violation, and a contrary rule would permit the government to pile on multiple convictions by repeatedly asking a declarant the same question." Stewart, 833 F.3d at 1013. Nonidentical false statements, however, may be charged separately because they require different proof. Id. at 146.

In this case, the Indictment does not contain multiplicitous counts because the questions that were posed were not identical and were not different ways of asking the same questions. The responses provided by Augustin in Count III and Count IV were solicited by different questions. In Count III, the agent asked whether Augustin worked in the club while Count IV asked whether Augustin received money from the club, and Augustin's statements in response required separate proof. Each question and answer conveys a separate meaning because it is possible to receive money without working at

16

the club. For instance, hypothetically, Augustin may have been payed for physically providing security services at the club or he could have been paid for not exposing criminal activity at the club. Additionally, each different false statement constitutes a separate crime because it would require different proof. One false statement requires proof that Augustin worked at the club. The second false statement requires proof that Augustin received money from the club. Additionally, each false statement would impede the Government's investigation differently. The Government was not only trying to determine what law enforcement officers had worked at the club, but they were also trying to determine whether Defendants and others had ever received money from the owners of the club for not reporting illegal activity or to discourage the investigation of illegal activity, and whether the club's owners paid bribes to government officials or police officers to allow its continued operation. (Docket Entry [76], p. 4). Therefore, this court concludes that the alleged false statements are different and separate offenses. See Segall, 833 F.2d at 146 (concluding that defendant's statements that she had only started receiving refund checks two or three weeks prior to May 12, that she only received $6,910.30 in refunds as of May 12, and that she received very little of the $173,000 in refunds were three separate false statements and were chargeable separately under 18 U.S.C. § 1001). Therefore, Augustin's Motion to Dismiss Count IV should be **DENIED**. Docket Entry [86].

## AUGUSTIN'S MOTION TO DISMISS COUNTS I AND II OF THE SECOND SUPERCEDING INDICTMENT

Defendant Augustin also filed a second motion seeking to dismiss counts of the

Indictment on different grounds. Docket Entry [90]. In Augustin 's Motion to Dismiss Counts I and II of the Second Superceding Indictment, Augustin argues that the first two counts of the Indictment should be dismissed on the grounds that the Indictment is insufficient because the Government does not allege an *explicit* quid pro quo, or explicit promise, by Defendants in exchange for the payments to them. Augustin maintains that the Indictment must, but fails to allege an explicit promise by Defendants to act or not to act.

As discussed above, a grand jury indictment must set forth the essential elements of the offense charged. Hamling, 418 U.S. at 117; Schmitz, 634 F.3d at 1259; United States v. Fern, 155 F.3d 1318, 1324-25 (11th Cir. 1998). "This rule serves two functions. First, it puts the defendant on notice of 'the nature and cause of the accusation as required by the Sixth Amendment of the Constitution. Second, it fulfills the Fifth Amendment's indictment requirement, ensuring that a grand jury only return an indictment when it finds probable cause to support all the necessary elements of the crime.' " Fern, 155 F.3d at 1325. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" Hamling, 418 U.S. at 117; United States v. Critzer, 951 F.2d 306, 308 (11th Cir. 1992). Likewise, the law does not require that an indictment track the statutory language. Fern, 155 F.3d at 1325. If the indictment specifically refers to the statute on which the charge was based, the reference

18

to the statutory language adequately informs the defendant of the charge. <u>Fern</u>, 155 F.3d at 1325. Furthermore, "if the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge," the indictment satisfies the Fifth Amendment. <u>Fern</u>, 155 F.3d at 1325.

Although the Eleventh Circuit has concluded that an explicit quid pro quo is an element of a Hobbs Act extortion offense for an elected official, here the Indictment has alleged enough to set forth this element as it is currently defined by the Eleventh Circuit. Title Eighteen, Section 1951(a) of the United States Code makes it a crime to "in any way or degree" obstruct, delay, or affect commerce by extortion. 18 U.S.C. § 1951(a). Under 18 U.S.C. § 1951(b)(2), extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." The quid pro quo requirement, which derives from the common law definition of "under color of official right," is discussed in two seminal Supreme Court cases, <u>McCormick v. United States</u>, 500 U.S. 257 (1991), and <u>Evans v. United States</u>, 504 U.S. 255 (1992). In <u>McCormick</u>, the United States Supreme Court examined the circumstances under which a politician who has accepted campaign contributions in exchange for his support of legislation favored by a campaign donor can run afoul of the Hobbs Act. In that case, the Court observed policy reasons for requiring that a quid pro quo be explicit in the context of Hobbs Act violations involving campaign contributions:

> Whatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the

19

benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right." To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation. . . .

McCormick, 500 U.S. at 272-73. Based on this reasoning, the Court further concluded that the receipt of such contributions violates the Act as having been taken under color of official right if "payments are made in return for an *explicit* promise or undertaking by the official to perform or not to perform an official act." Id. at 272-73 (emphasis added). In situations where the elected official asserts that his official conduct will be controlled by the terms of the promise or undertaking, the elected official receives money under color of official right within the meaning of the Hobbs Act.[2] McCormick,

---

[2] It is not clear that any explicit quid pro quo requirement should apply when ordinary law enforcement officers, who are not elected public officials, receive money in exchange for influence on the performance of their official duties, given that it is not part of their job to obtain monetary support from citizens. As recognized by the Third Circuit, "[o]utside the campaign contribution context, . . . the line between legal and illegal acceptance of money is not so nuanced." United States v. Antico, 275 F.3d 245, 257-58 (3d Cir. 2001), recognizing abrogation on other grounds, United States v. Riley, 612 F.3d 312, 322 (3d Cir. 2010); United States v. Giles, 246 F.3d 966, 972 (7th Cir. 2001) ("Other payments to officials are not clothed with the same degree of respectability as ordinary campaign contributions. For that reason, perhaps it should be easier to prove that those payments are in violation of the law."). In the context of cases not involving elected public officials, the Courts of Appeal have found that jury instructions adequately explained the quid pro quo element when the instruction required that the unelected public official knew that the money was given in return for taking some official action or understood that the payment is given so that the public official will exercise particular kinds of influence as specific opportunities arise). United States v. Kincaid-Chauncey, 556 F.3d 923, 937-38 (9th Cir. 2009); see also

500 U.S. at 272-73.

Subsequently, in Evans v. United States, 504 U.S. 255 (1992), the Supreme Court examined whether a conviction for extortion under the Hobbs Act could be sustained when a member of the DeKalb County Board of Commissioners accepted $7,000 as well as a $1,000 check payable to the commissioner's campaign from an under cover Federal Bureau of Investigation agent who sought the commissioner's assistance in an effort to rezone a 25-acre tract of land for high-density residential use.  Id. at 257.  Viewing the evidence in the light most favorable to the Government due to the favorable jury verdict, the Supreme Court assumed that the jury found that the Commissioner accepted the cash knowing that it was intended to ensure that he would vote in favor of the rezoning application and that he would try to persuade his fellow commissioners to do likewise. Id.  The Court further assumed that his acceptance of the bribe constituted an implicit promise to use his official position to assist the rezoning application.  Id.  The Commissioner did not report the cash on his income tax return or his state campaign-financing disclosure form.  Id.  After his conviction, the Commissioner challenged the

_____

Antico, 275 F.3d at 257-58 (not requiring an explicit quid pro quo); cf. Giles, 246 F.3d at 972 (concluding that under Evans, a quid pro quo showing is required in all cases, but in the non-campaign funding context, the government need not show an explicit agreement by the official–only that the public official understood that as a result of the payment he was expected to exercise "particular *kinds* of influence on behalf of the payor."  Indeed, in McCormick, the Supreme Court made a point of stating that McCormick did not challenge any rulings of the courts below with respect to the application of the Hobbs Act to payments made to non-elected officials and that they did not consider how the under color of official right phrase is to be interpreted and applied in those contexts.  McCormick, 500 U.S. at 268-69.

trial court's jury instruction on the grounds that the instruction did not require proof of an inducement by the Commissioner, such as an express demand, and allowed the jury to convict the Commissioner on the basis of a "passive acceptance of a contribution." Id. at 257, 267.  The instruction provided: "However, if a public official demands or accepts money in exchange for a specific requested exercise of his or her official power, such a demand or acceptance does constitute a violation of the Hobbs Act regardless of whether the payment is made in the form of a campaign contribution." Id. at 258.  The Court of Appeals affirmed the conviction and held that "passive acceptance of a benefit by a public official is sufficient to form the basis of a Hobbs Act violation if the official knows that he is being offered the payment in exchange for a specific requested exercise of his official power.  The official need not take any specific action to induce the offering of the benefit." Evans, 504 U.S. at 258.  The Supreme Court concluded that the Eleventh Circuit correctly decided that an affirmative act of inducement by the public official is not required to support a conviction of extortion under color of official right. Id. at 259.  In so holding, the Supreme Court stated that an offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts and that "the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." Id. at 268.

Synthesizing the McCormick and Evans cases, a panel of the Eleventh Circuit, in analyzing Hobbs Act claims brought against elected public officials, has held that in

order to prove an extortion violation under color of right, the Government must show

the existence of a quid pro quo. United States v. Martinez, 14 F.3d 543, 553 (11th Cir.

1994). Subsequently, in United States v. Davis, 30 F.3d 108 (11th Cir. 1994), the

Eleventh Circuit held that an "*explicit* promise by a public official to act or not act is an

essential element of Hobbs Act extortion. . . ." United States v. Davis, 30 F.3d 108, 109

(11th Cir. 1994), citing McCormick v. United States, 500 U.S. 257, 271 (1991). In

United States v. Siegelman, 640 F.3d 1159, 1170 (2011), the Eleventh Circuit, analyzing

McCormick, explained that while the decision in McCormick requires that the

agreement be explicit, it does not have to be *express*–it does not have to be

memorialized in writing, or heard by a third party. Id. at 1170. "To hold otherwise . .

. would allow defendants to escape criminal liability through knowing winks and nods."

Siegelman, 640 F.3d at 1171. The court in Siegelman further held that "the agreement

may be 'implied' from the official's actions"–that the jury is "quite capable of deciding

the intent with which words were spoken or actions taken as well as the reasonable

construction given to them by the official and the payor." Id. at 1172. The court further

reiterated that all that is required is that the official must agree to take or forego some

specific action in exchange for something of value. Id. at 1172; see also Martinez, 14

F.3d at 553 (holding that the Supreme Court in Evans v. United States, 504 U.S. 255

(1992) "modified this standard for non-campaign contribution cases in requiring the

government to prove 'that a public official has obtained a payment to which he is not

entitled, knowing the payment was made in return for official acts'"). Thus, the term

"explicit" does not speak to the form of the agreement, but rather the degree to which the payor and payee were aware of the terms of the agreement, regardless of whether the terms were expressly articulated. See United States v. Ross, No. 2:10cr186–MHT, 2011 WL 1562902, at *2 (M.D. Ala. Apr. 4, 2011); see also United States v. Blandford, 33 F.3d 685, 696 (6th Cir. 1994) (reconciling McCormick and Evans by concluding that the "quid pro quo of McCormick is satisfied by something short of a formalized and thoroughly articulated contractual arrangement (i.e., merely knowing the payment was made in return for official acts is enough") and that "[e]xplicit, as explained in Evans, speaks not to the form of the agreement between the payor and the payee, but to the degree to which the payor and payee was aware of its terms, regardless of whether those terms were articulated").

Under a common-sense construction of the Indictment, Counts I and II sufficiently allege a quid pro quo between the proprietor of the nightclub and Jones and Augustin. Counts I and II of the Indictment both charge[3] that beginning, at least by June 2007, and continuing until about September 15, 2007, Jones and Augustin knowingly conspired to obstruct, delay and affect commerce by means of extortion and received money that was not "otherwise due them" from the proprietor of the club for protection services which included "acting within their official capacity as law enforcement officers to discourage on-duty Atlanta Police officers from investigating activity at the

---

[3] Count II incorporates facts from Count I about the nature of the protection services to be provided.

24

Club and not reporting illegal activity at the Club." In this Court's view, the Indictment sufficiently alleges a knowing agreement on the part of the City of Atlanta Police officer defendants and the proprietor that, in exchange for money that was not otherwise due the officers, the officers would act in their official capacity as law enforcement officers to discourage on-duty police officers from investigating activity at the club and would refrain from reporting illegal activity at the club. Thus, the Indictment satisfactorily alleges an explicit quid pro quo.[4] United States v. Ross, No.2:10cr186–MHT, 2011 WL 1562902, at *2 (M.D. Ala. Apr. 4, 2011) (finding that quid pro quo was alleged in indictment where senator was alleged to have taken certain actions towards specific legislation in exchange for campaign contributions and that the indictment need not state that an official explicitly stated what he will do in exchange for the contribution); Cf. United States v. Salesman, 467 F. App'x 835, 841, 844-45 (11th Cir. 2012) (finding that sufficient evidence supported jury conviction and conclusion that quid pro quo occurred under Hobbs Act where city commissioner accepted a $3,000 "good faith payment" or bonus from undercover agents posing as businessmen from construction

---

[4] On Reply, Augustin argues that the Indictment does not sufficiently allege a Hobbs Act violation because, consistent with the words of the Indictment, Augustin and Jones could have received monetary compensation from the club owners for providing "protection services" and independently discouraged on-duty police officers from investigating illegal activity at the club. However, this interpretation is inconsistent with the Indictment because the Indictment states that Jones and Augustin received currency "not otherwise due them" for their protection services and maintains that their "protection services" included acting within their official capacity as law enforcement officers to discourage on-duty Atlanta Police officers from investigating activity at the Club and refraining from reporting illegal activity at the club.

25

company who expected commissioner to help them obtain more city construction projects); United States v. Hill, 70 F.3d 1280 (9th Cir. 1995) (concluding that indictment which alleged that legislator obtained under color of right a $2,500 money payment not due him in connection with legislation identified [as California State Legislature Assembly Bill 4203] adequately stated Hobbs Act violation for extortion because the quid pro quo requirement does not add additional element to Act but merely defines the term "under color of official right."); United States v. Malone, No. 2:03-CR-500-LRH-LRL, 2006 WL 2583293, at *2 (D. Nev. Sept. 6, 2006) (resisting conclusion that indictment must include discussion of explicit quid pro quo beyond referencing the language of Hobbs Act); United States v. Aliperti, 867 F. Supp. 142, 144-45 (E.D.N.Y. 1994) (same). Therefore, Augustin's Motion to Dismiss Counts I and II of the Indictment should be **DENIED**. Docket Entry [90].

## DEFENDANT AUGUSTIN'S MOTION FOR SEVERANCE AND TRANSFER PURSUANT TO RULE 8(b)

In Augustin's Motion for Severance and Transfer Pursuant to Rule 8(b) (Docket Entry 87), Augustin argues, pursuant to Rule 8(b), that he should be tried separately from Defendant Jones because there was no common purpose or scheme connecting their alleged criminal acts and unspecified evidence at Jones's trial indicated that there was no overall agreement or master plan to achieve an unlawful purpose between Jones and Augustin.

Rule 8(b) of the Federal Rules of Criminal Procedure provides that it is proper for an indictment to charge two or more defendants together if they are alleged to have

26

participated in the same act or transaction or in the same series of acts or transactions constituting the offenses. Fed. R. Crim. P. 8(b). Rule 8 requires only that the government allege, not prove, the facts necessary to sustain joinder. United States v. Dominguez, 226 F.3d 1235, 1241 n.8 (11th Cir. 2000); United States v. Morales, 868 F.2d 1562, 1567 (11th Cir. 1989) (holding that Rule 8 is a pleading rule and joinder under Rule 8(b) is to be determined before trial by examining the allegations contained in the indictment). "If the indictment's allegations, taken as true, establish a single conspiracy, and there is no claim of prosecutorial bad faith or an erroneous interpretation of law, the court must conclude that initial joinder was proper." United States v. Andrews, 765 F.2d 1491, 1496 (11th Cir. 1985); see also United States v. Beale, 921 F.2d 1412, 1429 (11th Cir. 1991); Morales, 868 F.2d at 1568-68. Each co-conspirator need not have participated in all acts or been involved in every phase of the venture to be joined together in the same indictment. United States v. Holloway, 971 F.2d 675, 679 (11th Cir. 1992); United States v. Bryan, 843 F.2d 1339, 1342 (11th Cir. 1988); see also United States v. Jones, 913 F.2d 1552, 1562 (11th Cir. 1990) (noting that joinder has been held proper where an "indictment charges multiple defendants with participation in a single conspiracy and also charges defendants with substantive counts arising out of the conspiracy."). Nor must each participant be aware of the other participants' roles and identities. Wilson, 894 F.2d at 1253. It is sufficient for the government to demonstrate that the acts alleged are united by some substantial identity of facts or participants. United States v. Wilson, 894 F.2d 1245, 1253 (11th Cir. 1990);

27

United States v. Andrews, 765 F.2d 1491, 1496 (11th Cir. 1985) ("The character of the acts must have been similar, . . and each of the actors must have known that he acted in furtherance of a common plan in which other participants were involved."). When individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present. United States v. Nettles, 570 F.2d 547, 551 (5th Cir. 1978). In this case, as discussed above in connection with Augustin's Motion to Dismiss Counts I and IV of the Second Superceding Indictment, because the Government has charged Defendants with a single conspiracy, joinder of Defendants Jones and Augustin is proper under Rule 8(b). Accordingly, Augustin's Motion for Severance and Transfer Pursuant to rule 8(b) is **DENIED**.[5] Andrews, 765 F.2d at 1496; see also Beale, 921 F.2d at 1429; Morales, 868 F.2d at 1568-68. Docket Entry [87].

## DEFENDANT JONES'S AMENDED MOTION TO DISMISS INDICTMENT AND ADOPTION OF PRIOR MOTIONS

In Defendant Jones's Motion to Dismiss the Indictment and Adoption of Prior Motions, like Defendant Augustin, he argues that Counts I and II of the Second Superceding Indictment should be dismissed on the grounds that they failed to identify a quid pro quo. Docket Entry [92]. For the reasons stated above in connection with

---

[5] Augustin expressly states that he is not challenging his joinder pursuant to Rule 14(a); thus, this Court has not analyzed whether severance is appropriate pursuant to Rule 14(a). Docket Entry [96], p. 1 ("Mr. Augustin has not requested severance based on Rule 14(a), and no showing of prejudice is required under Rule 8(b), which is the rule on which Mr. Augustin has based his motion for severance.")

AO 72A
(Rev.8/82)

Defendant Augustin's Motion to Dismiss Counts I and II of the Second Superceding Indictment, Defendant Jones's Motion to Dismiss Counts I and II should be **DENIED**.

Defendant Jones also moves to adopt motions he filed before the Government filed its Second Superceding Indictment, including his Motion for a Bill of Particulars (Docket Entry 63), his Motion to Dismiss or for the Election of Count on Grounds of Multiplicity (Docket Entry 64), his Motion to Dismiss the Indictment (Docket Entry 66), and his Motion to Adopt the Motions of Co-Defendant (Docket Entry 73). Jones's Motion to adopt the prior motions is **GRANTED** as to Jones's former Motion for a Bill of Particulars (Docket Entry 63), Motion to Dismiss or for the Election of Count on Grounds of Multiplicity (Docket Entry 64), and Motion to Dismiss the Indictment (Docket Entry 66).

As for Jones's Motion to Adopt his former Motion to Adopt the Motions of Co-Defendant (Docket Entry 73), however, this request is **DENIED**. In Jones's Motion to Adopt Motion of Co-Defendant, he seeks to adopt Augustin's Motion to Dismiss Counts I, II, and IV of the First Superseding Indictment or in the Alternative for a Bill of Particulars(Docket Entry 61) and supporting briefs (Docket Entry 72). Docket Entry [73]. While this Court has previously advised Jones's counsel that he may adopt Augustin's motion at the pretrial conference on April 18, 2012, upon further consideration, this Court concludes that adoption of Augustin's prior motion is inappropriate. Augustin's prior motion was not tailored to the allegations of the Second Superceding Indictment, which is substantially different and contains more factual detail

29

than the First Superceding Indictment. Thus, Augustin's prior motion to dismiss has been rendered moot by the Second Superceding Indictment. Furthermore, Jones has already raised similar issues in his own motions. Therefore, Jones's Motion to Adopt Motions of Co-Defendant is **DENIED**. Docket Entry [92]. However, to the extent that Augustin's Motion to Dismiss Counts I, II, and IV of the First Superseding Indictment or in the Alternative for a Bill of Particulars (Docket Entry 61) raises some issue pertaining to Jones that has not previously been addressed in this Court's recommendations as to the adjudication of either Augustin or Jones's other motions, Jones may file a more particularized motion within fourteen (14) days of the date of this Order and Report and Recommendation. Each of the remaining prior motions Jones has adopted is discussed below.

## I.    Motion for a Bill of Particulars

In Defendant Jones's Motion for a Bill of Particulars, he argues that he is entitled to a Bill of Particulars requiring the Government to (1) State with as much particularity as possible the official acts committed by the Defendants in return for payment; (2) State particularly the names of all co-conspirators, whether or not charged; and (3) State with particularity the overt acts committed by Jones and Augustin in furtherance of the alleged conspiracy in Count One and the overt acts committed in aiding and abetting each as alleged in Count Two.   For the most part, the information sought by Jones is broader than the proper scope of a bill of particulars.  It is not the purpose of a bill of particulars to require the Government to provide all the evidentiary details and legal

30

theories of its case; the purpose is to provide the defendant with information essential to his defense. <u>United States v. Blitch</u>, No. 5:08-CR-40(HL), 2009 WL 973359, at *6 (M.D. Ga. Apr. 9, 2009). In that regard, the Eleventh Circuit has previously determined that "the government is under no duty to provide defendant with all the overt acts that might be proven at trial." <u>United States v. Martell</u>, 906 F.2d 555, 558 (11th Cir. 1990); <u>Rosenthal</u>, 793 F.2d at 1227; <u>United States v. Leiva–Portillo</u>, No. 1:06–CR–350–WSD, 2007 WL 1706351, at *15 (N.D.Ga. June 12, 2007) ("Case law is ... clear that the [g]overnment is not required to identify the exact dates or details of when a defendant or any conspirator joined or withdrew from a charged conspiracy, ..., or specific acts or overt acts done in furtherance of a charged conspiracy by particular defendants.").

The Indictment at issue in this case, adequately informs Jones of the purpose of the agreement, participants in the agreement, the time frame in which the conspiracy allegedly occurred (less than four months), and the general nature of the protective services that Jones performed in furtherance of the conspiracy. Thus, Jones's request that the Government be compelled to state with as much particularity as possible the official acts committed by Defendants in return for payment and all of the overt acts committed by Jones and Augustin in furtherance of the alleged conspiracy in Count One and the overt acts committed in aiding and abetting each other as alleged in Count Two is overbroad. Accordingly, Jones's request is **DENIED**. <u>United States v. Paiva</u>, 892 F.2d 148, 154-55 (1st Cir. 1989) (affirming the denial of a motion for bill of particulars specifying, among other things, the precise dates when the conspiracy began and ended

and when defendant allegedly joined and withdrew from the conspiracy, names of all conspirators, dates, and places they joined conspiracy, and the dates, times, and places of drug transactions); Rosenthal, 793 F.2d at 1227. However, as this Court has previously determined, the Second Superceding Indictment, while legally sufficient, fails to provide Defendants with sufficient factual information to prepare their defense as to the illegal activity each agreed not to report and what investigations by other Atlanta Police officers they agreed to discourage. Accordingly, the Government is **ORDERED** to provide a Bill of Particulars in which the Government shall generally describe the illegal activity Jones agreed not to report/refrained from reporting and what investigations by other Atlanta Police officers Jones discouraged or agreed to discourage.

As for Jones's request for the identification of co-conspirators, to the extent that the names of unindicted co-conspirators are necessary to avoid surprise or for understanding the nature and scope of the crime charged in the indictment, a bill of particulars may be required to identify co-conspirators. United States v. Scrushy, No. CR-03-BE-530-S, 2004 WL 483264, at *9 (N.D. Ala. Mar. 3, 2004); United States v. Barrentine, 591 F.2d 1069, 1077 (11th Cir. 1979). In this case, however, Jones does not make this showing. Accordingly, Jones's Motion is **DENIED** as to his request for the names of all co-conspirators, whether or not charged. See Paiva, 892 F.2d at 154-55 (affirming denial of motion for bill of particulars specifying names of all conspirators); United States v. Welch, 198 F.R.D. 545, 551 (D. Utah 2001) (rejecting request for

names of co-conspirators because defendant made no showing that he needed it to prepare the defense or avoid surprise).

**II.     Motion to Dismiss or for the Election of Count on Grounds of Multiplicity**

Defendant Jones contends that Counts Seven, Eight, and Nine within the First Superceding Indictment were multiplicitous and should either be dismissed or the Government should be required to make an election as to which Count it will prosecute. In support, Jones argues that Count Seven of the First Superceding Indictment which charges that Jones knowingly and willfully made a materially false statement when he answered "no" in response to the question "did you work at the club," Count Eight which alleges that Jones made a materially false statement when he answered "how many times do I have to tell you, I never worked at the club," and Count Nine which charges that Jones made a false statement when he responded "no" to the question "did Akins ever pay you any money" were multiplicitous because they asked the same questions and solicited the same information.  For the same reasons discussed above in connection with Defendant Augustin's Motion to Dismiss Counts I and IV of the Second Superceding Indictment, the alleged false statement referred to in Count Nine was not multiplicitous because it was made in response to a different question than the false statement made in Count Seven and conveyed different information which impeded the Government's investigation differently.

Although Counts Seven and Eight of the First Superceding Indictment may have been multiplicitous because the statements in Counts Seven and Eight conveyed the

AO 72A
(Rev.8/82)

same idea, the Government has filed a Second Superceding Indictment. That Indictment consolidated statements within the former Counts Seven and Eight into one count. An indictment is only multiplicitous if it charges a single offense in more than one count. Smith, 231 F.3d at 815; United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995). "When the government charges a defendant in multiplicitous counts, two vices may arise. First, the defendant may receive multiple sentences for the same offense. Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes-not one." Smith, 231 F.3d at 815. In this case, the consolidation of the discussion of the two statements into one count has therefore resolved the multiplicity problem. Therefore, Jones's Motion to Dismiss or for the Election of Count on Grounds of Multiplicity should be **DENIED**. (Docket Entry 64).

## III.  Motion to Dismiss Indictment

In Defendant Jones's Motion to Dismiss Indictment (Docket Entry 66), Jones contends that Counts Seven and Eight should be dismissed due to prosecutorial misconduct because false testimony was given to the Grand Jury which indicted him. Jones appears to argue that there are discrepancies in the way the questions were asked of him that lead to the alleged false statements in the Counts Seven and Eight of the Indictment. Specifically, Jones contends that there was a discrepancy in the way question were asked of him in Counts Seven and Eight of the Indictment compared to how the questions were depicted in the testimony given at the suppression hearing and Jones's trial. In support, Jones argues that although Count Seven states that Jones was

34

asked "did you work at the club," Agent James P. Hosty testified during the suppression hearing that the question asked of Jones was "did you *ever* work at the club *at Lincoln and Pryor Street*" and Agent Todd A. Goodson testified that the agents "asked [Jones] about his involvement at the nightclub located at the intersection of Lincoln and Pryor streets" and whether "he had ever worked there." Jones further argues that Count Eight of the Indictment indicates that Jones was asked "did Akins ever pay you any money" when Agent Goodson testified during the trial of Jones that agents asked Jones "if he had ever received money from the owner of the club."

"Dismissal of an indictment is an extreme sanction which should be infrequently utilized." United States v. DiBernardo, 775 F.2d 1470, 1475 (11th Cir. 1985). A witness' false testimony before the grand jury does not automatically vitiate the indictment based on that testimony. DiBernardo, 775 F.2d at 1475. "To make out a claim of prosecutorial misconduct regarding the use of false testimony, a defendant must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." United States v. Akel, 337 F. App'x 843, 858 (11th Cir. 2009). In order to dismiss an indictment, the district court must find "an abuse of the grand jury process such as perjury or government misconduct." DiBernardo, 775 F.2d at 1475. "The requirements of perjury are that "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a

35

mistake, confusion, or faulty memory." <u>United States v. Singh</u>, 291 F.3d 756, 763 n. 4 (11th Cir.2002).

In this case, Jones has not shown that false testimony was submitted to the Grand Jury. Indeed, Jones has not presented any evidence as to what testimony was presented to the Grand Jury. The fact that Jones points out possible subtle variations in the precise questions asked of Jones as depicted in the Indictment versus testimony given at the suppression hearing and Jones's first trial is of no import. Even if the testimony given to the Grand Jury as to the precise questions asked of Jones during the investigation mirrors the questions as stated in Counts Seven and Eight of the Indictment and not the suppression hearing and trial testimony, there is no showing that variations in testimony were material and did not merely result from imperfect memories or imprecise language used by the agents. Therefore, Jones's Motion to Dismiss the Indictment should be **DENIED**. Docket Entry [66].

### DEFENDANT JONES'S MOTION FOR PRODUCTION OF GRAND JURY TRANSCRIPTS

In Defendant Jones's Motion for Production of Grand Jury transcripts he requests production of Grand Jury transcripts from the Grand Jury sessions which resulted in the First and Second Superceding Indictments. Docket Entry [93]. Jones requests the transcripts so that he has an opportunity to determine whether false or misleading testimony was presented to the Grand Jury concerning the precise questions asked of Jones during the investigation concerning whether he worked at the club or received money from the club's owner. The Government responds that it will disclose the Grand

36

Jury witness testimony despite Jones's failure to show that he is entitled to them provided that the Court will issue a protective order limiting the use of the transcripts. The Government has submitted a proposed protective order, and Jones has not objected to it. Accordingly, Jones's Motion is **GRANTED**, subject to the conditions of the Proposed Protective Order (Docket Entry 98-1). Docket Entry [93].

## CONCLUSION

For the foregoing reasons, this Court concludes that:

(1) Defendant Augustin's Motion to Dismiss Counts I, II and IV of the First Superceding Indictment should be **DEEMED MOOT**. Docket Entry [61].

(2) Defendant Augustin's Motion for Severance Pursuant to Rule 8(b) is **DEEMED MOOT**. Docket Entry [62].

(3) Defendant Jones's Motion for Bill of Particulars is **GRANTED IN PART** and **DENIED IN PART**. Docket Entry [63].

(4) Defendant Jones's Motion to Dismiss or for the Election of Count on Grounds of Multiplicity should be **DENIED**. Docket Entry [64].

(5) Defendant Jones's Motion to Dismiss the Indictment should be **DENIED**. Docket Entry [66].

(6) Defendant Augustin's Motion to Dismiss Counts I and IV of the Second Superceding Indictment should be **DENIED**. Docket Entry [86]. Defendant Augustin's Alternative Motion for a Bill of Particulars should be **GRANTED IN PART AND DENIED IN PART**. Docket Entry [86].

AO 72A
(Rev.8/82)

(7) Defendant Augustin's Motion to Sever Defendant is **DENIED**.  Docket Entry [87].

(8) Defendant Augustin's Motion to Dismiss Counts I and II of the Second Superceding Indictment should be **DENIED**.  Docket Entry [90].

(9) Defendant Jones's Amended Motion to Dismiss the Indictment should be **DENIED**.  Docket Entry [92].

(10) Defendant Jones's Motion for Adoption of Prior Motions is **GRANTED IN PART AND DENIED IN PART**.  Docket Entry [92].

(11) Defendant Jones's Motion for Production of Grand Jury Transcripts is **GRANTED**.  Docket Entry [93].

Because this Court has provided Jones with an opportunity to provide a particularized motion within fourteen days of the date of this Order and Report and Recommendation, Defendant Augustin is **CERTIFIED READY FOR TRIAL** but not Defendant Jones.  However, if Defendant Jones does not file any additional motions within the next fourteen days, the Court will certify Jones and this action ready for trial as well.

**SO ORDERED, REPORTED AND RECOMMENDED** this _2_ day of July 2012.

/s/ Linda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)